F. M. EDMONDSON *v.* J. B. INGRAM ET AL.

TAX-TITLE.   *Payment of taxes; how shown.   Receipt.   Code* 1880, § 516.
> Under § 516, code 1880, which is mandatory in directing that certain formal receipts shall be given to tax-payers from a book of receipts, and provides that "any other receipt shall not be valid as evidence," payment of taxes before sale cannot be shown to invalidate a tax-title where the prescribed receipt was not given.   But this will not prevent proof of the loss or destruction of a valid receipt.

FROM the chancery court of Bolivar county.

HON. W. R. TRIGG, Chancellor.

Appellant, Edmondson, filed his bill against the appellees in the court below to cancel a tax deed, alleged to be a cloud upon the title of complainant to certain land. The case was heard on bill, answer and proofs, and a decree was rendered in favor of defendants. As to the question decided by this court, the following facts

appear in the record, and were shown in the court below. Complainant, Edmondson, owned the land, which is situated in Bolivar county. On the 12th day of December, 1885, he sent by registered letter from Duck Hill, Miss., the sum of $5, to pay the taxes for that year on this land. The letter was addressed, " Geo. P. Melchior, sheriff, Bolivar county, Rosedale, Miss." Melchior had been sheriff and tax collector of the county, and complainant supposed that he was still in office. The letter was duly received at the sheriff's office December 16, 1885, the return card or receipt being signed, " Geo. Y. Scott, sheriff, C. S. Jones, D. S." Scott was then sheriff and tax collector. This card or receipt was received by Edmondson in due course of mail. Afterwards he wrote the tax collector that there was something due him, the $5 being more than the amount of the taxes, and on January 3, 1886, the collector wrote him in reply, returning ninety-five cents. Complainant testified that he wrote to the sheriff to ascertain the amount of the taxes before sending the money, and that he had received either a tax receipt or a statement showing the amount of taxes, which he had sent to his father in Birmingham, Ala., since deceased ; but he was not positive that he had ever had a tax receipt, and none was produced, nor was any duplicate receipt offered or shown to exist.

Notwithstanding the above facts, on the first Monday of March, 1886, Scott, as sheriff and tax-collector, sold the land for $5.15, taxes and costs assessed against the same for the year 1885, the defendant, Johnson, becoming the purchaser, and he received a deed. On the 9th day of May, 1887, after the period for redemption had expired, he conveyed the land to the defendants, J. B. and B. H. Ingram, minors.

On the allegation that the taxes had been paid before sale, the bill sought to cancel these conveyances as clouds upon the title of complainant. Objection was made to proof of payment, no official tax receipt being introduced in evidence.

Section 516, code 1880, is as follows : " Each collector shall give to every one paying taxes a receipt, dated, numbered, and filled up, so as to show by whom and on what taxes were paid, amount

of land and personalty assessed, and rate per centum at the head of the receipt, which shall be prepared for the purpose, and, in case of land, distinctly specifying it as it is described on the assessment roll, and taken from said tax receipts in the book of receipts, and any other receipt shall not be valid as evidence ; and the duplicate of such receipt, numbered and filled up, so as to be an exact copy of it, shall be left in its place in said book of receipts ; and any tax collector, who shall fail to fill up such tax receipts, or to preserve the book of receipts filled, as aforesaid, or to submit such book to the board of supervisors, when required, or to deliver such book to the clerk of the chancery court of the county, shall, upon conviction, be removed from office, and be fined not less than one thousand dollars, and be imprisoned in the county jail not less than six months ; and any clerk who shall fail to receive and receipt for such book, when delivered to him, or to preserve it as a record of his office, shall be guilty of a misdemeanor."

*Moore & Jones,* for appellant.

It is evident from the language of § 516, code 1880, that the legislature intended to prevent tax-collectors from giving private receipts for taxes, thus hedging against an opportunity to commit fraud. It cannot be assumed, however, that the tax-payer who has paid his taxes, or to whom the collector fails to issue the proper receipt, shall suffer on account of the neglect of the officer. The construction contended for by appellees would be unconstitutional and monstrous ; it would be taking private property without due process of law, and in the case at bar it would be to deprive the complainant of his property, when, as a citizen, he had performed the full measure of his duty to the state.

All that could have been intended by the statute was, that no other *receipt* than the one prescribed should be received in evidence to show payment of taxes. It does not preclude a citizen who has duly paid his taxes from showing the fact of payment in the usual way by any competent evidence. Where no receipt has been issued, payment of taxes may be proved by oral evidence. It is not necessary to introduce the collector's books, or any receipt.

Blackwell on Tax Titles, § 417; Cooley on Taxation, p. 323; 2 Greenleaf's Ev. § 517; *Hammond* v. *Hannin*, 21 Mich. 383.

The taxes on the land in controversy for the year 1885 were paid, and the lien therefor was discharged; therefore the subsequent sale for taxes was void. One who has paid the taxes due on his land is unaffected by a sale of the same for such taxes, or by any lapse of time. *Metcalfe* v. *Perry*, 66 Miss. 68.

*Nugent & McWillie*, for appellees.

Section 516 of the code requires tax-collectors to give to each tax-payer a prescribed receipt, and expressly provides that "any other receipt shall not be valid as evidence." It also requires duplicates to be preserved as county records; and § 529 makes a collector selling land after the taxes have been paid liable to the purchaser for three times the amount bid, and to the owner for $50 for each sub-division. Undoubtedly, we insist that the payment of taxes can only be evidenced by the special form of receipt provided by law. In this case until the collector appropriated the remittance to the payment of taxes and gave the statutory receipt, he was not accountable to the state for the money. He held it merely as the agent of the sender, whose duty it was to look after the application of the money and to secure his tax receipt. The purpose of § 516 is apparent, and it rests upon a sound basis. It is quite a necessary law. Without it settlements with collectors could never be satisfactorily effected, and delinquent tax-payers, after the lapse of years, could find an easy escape from tax-titles. So, also, tax-collectors could put out receipts, and afterwards sell the lands to the state and get credit for them in settlements with the auditor. This systematic plan of robbery was prosecuted in many counties prior to the enactment of the statute, and enriched many a "wayfaring man."

*Charles Scott*, on the same side.

WOODS, C. J., delivered the opinion of the court.

This case can be conclusively settled by a determination of a single proposition. The appellant seeks to prove the payment of the taxes due by him on the land in controversy, not by the pro-

duction of the specific receipt declared by section 516, code of 1880, to be the only tax receipt which shall be valid as evidence of the payment of the taxes, but by other evidence.

The purpose of the statute appears to be twofold, viz: (1) To prevent frauds upon the revenue on the part of the fiscal agents of the state in the collection and settlement of taxes; and (2) to cut up by the root litigation growing out of loose and irregular or pretended payments of taxes by the citizen. The exact and minute and ample details of the requirements of section 516 must be held to shut out any other evidence of payment than the production of the prescribed tax receipt.

It is admitted by counsel for appellant that "it is evident the legislature intended to prevent the tax-collector from giving a private" [we suppose any other than the *official* receipt prescribed] "receipt for taxes, thus hedging against the opportunity to commit fraud," and this candid and manly admission clearly carries this question beyond the domain of disputation; for if any other *private* receipt, as contra-distinguished from the prescribed *official* receipt, though such other receipt be written and signed by the tax collector, admittedly is not "valid as evidence," it is impossible to resist the conclusion that any oral evidence of payment must likewise be necessarily held not valid and inadmissible.

Of course, if the tax-payer has settled his taxes and obtained the prescribed receipt from the collector and the same shall be lost or destroyed, or by any other means be incapable of production, the tax-payer may make proof to supply the missing receipt. But the case at bar is not of that character, and if the tax-payer in this instance shall suffer hurt and damage it will result from his trusting to mails and to inattentive agents whom he employed to pay his taxes and procure the prescribed receipt, and from his disappointment by the failure of these agencies to meet his wishes and instructions.

It may be hard, but so the law is written, and it is not for us to soften its requirements.

*Affirmed.*